UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

OZAKI TRICE                                                                                                  CIVIL ACTION

VERSUS                                                                                                          NO. 19-10787

DARREL VANNOY, WARDEN                                                                         SECTION: "S"(1)

REPORT AND RECOMMENDATION

Petitioner, Ozaki Trice, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the petition be **DISMISSED WITH PREJUDICE**.

On May 8, 2014, petitioner was convicted of aggravated rape under Louisiana law.[1] On June 11, 2014, he was sentenced on that crime to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] After the Louisiana Fifth Circuit Court of Appeal then affirmed his conviction and sentence on December 16, 2014,[3] he did not seek further direct review.

On July 23, 2015, petitioner filed a "Motion for Post-Conviction Out-of-Time Appeal" with the state district court.[4] That motion was denied on August 3, 2015.[5] Petitioner did not seek review of that judgment by the Louisiana Fifth Circuit Court of Appeal or the Louisiana Supreme Court.

---

[1] State Rec., Vol. 5 of 6, transcript of May 8, 2014, p. 164; State Rec., Vol. 2 of 6, minute entry dated May 8, 2014; State Rec., Vol. 2 of 6, jury verdict form.
[2] State Rec., Vol. 2 of 6, transcript of June 11, 2014; State Rec., Vol. 2 of 6, minute entry dated June 11, 2014.
[3] State v. Trice, 167 So. 3d 89 (La. App. 5th Cir. 2014); State Rec., Vol. 5 of 6.
[4] State Rec., Vol. 2 of 6.
[5] State Rec., Vol. 2 of 6, Order dated August 3, 2015.

On December 16, 2015, petitioner filed an application for post-conviction relief with the state district court.[6] After that application was denied on January 5, 2016,[7] he filed a related writ application with the Louisiana Fifth Circuit Court of Appeal.[8] On April 8, 2016, the Court of Appeal granted that application in part "for the limited purpose of ordering the trial court to instruct the Clerk of Court for the Twenty-Fourth Judicial District Court to provide relator with an estimate of the cost of a copy of the record in this case."[9] The court then denied the remaining aspects of the application, but noted that petitioner could "raise his claims of ineffective assistance of trial and/or appellate counsel" in a future application; however, the court expressly warned him that Louisiana law required that any such application be filed within two years of the date of finality of his conviction and sentence.[10] Petitioner did not seek review of that judgment by the Louisiana Supreme Court.

Petitioner filed another application for post-conviction relief with the state district court on November 28, 2017.[11] That application was denied on December 20, 2017,[12] and the Louisiana Fifth Circuit Court of Appeal then likewise denied relief on March 2, 2018.[13] On March 25, 2019, the Louisiana Supreme Court thereafter denied petitioner's related writ application, holding: "The application was not timely filed in the district court, and applicant fails to carry his burden to show that an exception applies. La.C.Cr.P. art. 930.8; State ex rel. Glover v. State, 93-2330 (La. 9/5/95), 660 So.2d 1189."[14]

---

[6] State Rec., Vol. 2 of 6.
[7] State Rec., Vol. 2 of 6, Order dated January 5, 2016.
[8] State Rec., Vol. 6 of 6.
[9] Trice v. Cain, No. 16-KH-142, p. 3 (La. App. 5th Cir. Apr. 8, 2016); State Rec., Vol. 6 of 6.
[10] Id.
[11] State Rec., Vol. 2 of 6.
[12] State Rec., Vol. 2 of 6, Order dated December 20, 2017.
[13] State v. Trice, No. 18-KH-58 (La. App. 5th Cir. Mar. 2, 2018); State Rec., Vol. 6 of 6.
[14] State v. Trice, 266 So. 3d 893 (La. 2019); State Rec., Vol. 6 of 6. Article 930.8 sets forth the limitations period for filing applications for post-conviction relief. In Glover, the Louisiana Supreme Court held that an appellate court can

On or about May 29, 2019, petitioner filed the instant federal application seeking habeas corpus relief.[15] The state filed a response arguing that the application is untimely.[16]

### The Applicable Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a statute of limitations for petitioners seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Specifically, the AEDPA provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

---

deny a post-conviction application as untimely under article 930.8, even if the lower court addressed the merits or did not consider timeliness.

[15] Rec. Docs. 1 and 3. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). As originally submitted, petitioner's federal application was undated, and he left blank the section in which he was required to declare when his application was placed in the prison mailing system. See Rec. Doc. 1, p. 15. However, the application is stamped as having been received in the Louisiana State Penitentiary's Legal Programs Department on May 29, 2019. See id. at p. 1.

[16] Rec. Doc. 12.

**Subsections B and C**

Subsections B and C of 28 U.S.C. § 2244(d)(1) clearly do not apply in the instant case because petitioner does not allege the existence of either a state-created impediment or a newly recognized constitutional right.

**Subsection A**

The state argues that Subsection A applies here.  Regarding that subsection, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).   When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."* Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
> *Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review.  See Foreman, 383 F.3d at 338-39.   As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal.  See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693.   Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."*

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

Here, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence on December 16, 2014,[17] and it mailed the notice of its judgment that same day.[18]

---

[17] State v. Trice, 167 So. 3d 89 (La. App. 5th Cir. 2014); State Rec., Vol. 5 of 6.
[18] State Rec., Vol. 2 of 6, Notice of Judgment and Certificate of Delivery.

Because petitioner did not thereafter seek further direct review by the Louisiana Supreme Court, his state criminal judgment became final for AEDPA purposes no later than January 15, 2015, when his thirty-day deadline for seeking such review expired. See id. Under § 2244(d)(1)(A), his federal limitations period therefore commenced on that date and then expired one year later, unless that federal deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After one hundred eighty-eight (188) days of his federal statute of limitations elapsed untolled,[19] petitioner first tolled the limitations period by filing the "Motion for Post-Conviction Out-of-Time Appeal" with the state district court on July 23, 2015.[20] When that motion was denied on August 3, 2015,[21] he then had thirty days to seek review of that denial by the Louisiana Fifth Circuit Court of Appeal. See Louisiana Uniform Rules of the Courts of Appeal Rule 4-3; see also

---

[19] During that period, petitioner filed a "Motion for Production of Trail [sic] Transcripts" with the state district court. State Rec., Vol. 2 of 6. *However, that filing, and the other similar filings requesting records and documents subsequently filed in this case, had no effect on the federal limitations period.* Applications seeking transcripts or other records are not considered applications "for State post-conviction or other collateral review" for tolling purposes because they are preliminary in nature and do not directly call into question the validity of a petitioner's conviction or sentence. Higginbotham v. Tanner, Civ. Action No. 10-1130, 2011 WL 3268128, at *1 (E.D. La. July 29, 2011); Parker v. Cain, Civ. Action No. 02-0250, 2002 WL 922383, at *2 n.22 (E.D. La. May 1, 2002), certificate of appealability denied, No. 03-30107 (5th Cir. June 23, 2003); Boyd v. Ward, Civ. Action No. 01-493, 2001 WL 533221, at *4 (E.D. La. May 15, 2001), certificate of appealability denied, No. 01-30651 (5th Cir. Aug. 22, 2001).

[20] State Rec., Vol. 2 of 6. Federal habeas courts apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to petitioner's *pro se* state court pleadings in this case, the Court has simply used the signature dates of the pleadings as their filing dates, in that the pleadings were obviously placed in the mail no earlier than the dates on which they were signed. See United States v. Minor, 582 F. App'x 315, 316 (5th Cir. 2014); Estes v. Boutté, Civ. Action No. 19-2289, 2020 WL 1990823, at *2 (E.D. La. Mar. 6, 2020), adopted, 2020 WL 1984331 (E.D. La. Apr. 27, 2020); Crochet v. Goodwin, Civ. Action No. 13-3106, 2014 WL 5093995, at *2 n.10 (E.D. La. Oct. 8, 2014); Thornton v. Terrell, Civ. Action No. 09-1631, 2009 WL 4855743, at *1 n.1 (E.D. La. Dec. 4, 2009).

[21] State Rec., Vol. 2 of 6, Order dated August 3, 2015.

Melancon v. Kaylo, 259 F.3d 401, 404 (5th Cir. 2001); Campbell v. Cain, Civ. Action No. 06-3983, 2007 WL 2363149, at *3 & n.24 (E.D. La. Aug. 15, 2007).  Because he sought no such review, tolling ended on September 2, 2015, when his period for seeking such review expired.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004) (a state application ceases to be pending for tolling purposes when the time for seeking supervisory review expires).

An additional one hundred four (104) days of the federal limitations period then elapsed before it was again tolled by petitioner's filing of his state post-conviction application on December 16, 2015.[22]  Despite the fact that the application was denied by the state district court on January 5, 2016,[23] a state post-conviction application nevertheless remains "pending" for tolling purposes while a petitioner continues to seek *timely* review of a denial at the higher levels of the state court system.  See Grillette, 372 F.3d at 769-72.

Here, petitioner sought review of the denial by filing a related writ application with the Louisiana Fifth Circuit Court of Appeal.[24]  Although the state argues in its response that the writ application was untimely,[25] the Court of Appeal did *not* indicate in its opinion that it found the application to be untimely.[26]  Therefore, the undersigned will assume that the Court of Appeal determined the application was in fact timely and that tolling continued uninterrupted despite the seeming untimeliness of the writ application.  See id. at 775 ("[W]hen the denial of an application is based on untimeliness, Louisiana courts routinely and unmistakably indicate so in their opinions.  Thus, had the Louisiana Court of Appeal decided to reach the merits of the application

---

[22] State Rec., Vol. 2 of 6.
[23] State Rec., Vol. 2 of 6, Order dated January 5, 2016.
[24] State Rec., Vol. 6 of 6.
[25] Rec. Doc. 12, p. 13.
[26] See Trice v. Cain, No. 16-KH-142 (La. App. 5th Cir. Apr. 8, 2016); State Rec., Vol. 6 of 6.

notwithstanding a determination that the application was untimely, it appears that the court would have indicated any such untimeliness in its opinion." (citations omitted)); see also Bourgeois v. Bergeron, Civ. Action No. 09-3185, 2009 WL 5088756, at *4 (E.D. La. Dec. 23, 2009) ("While one could perhaps argue that the Fifth Circuit is too generous in its assumption that evident untimeliness is always noted without fail by the state courts, this Court may not unilaterally ignore the presumptions employed in Grillette.").

Accordingly, although that writ application was ultimately denied in part and granted in part by the Louisiana Fifth Circuit Court of Appeal on April 8, 2016,[27] the undersigned finds that the application remained "pending" – and tolling continued uninterrupted – until May 9, 2016, when petitioner's thirty-day period for seeking further review by the Louisiana Supreme Court expired.  See Louisiana Supreme Court Rule X, § 5(a).[28]

When the federal limitations period then resumed running at that point, two hundred ninety-two (292) days had already elapsed, leaving petitioner with seventy-three (73) days remaining.  Accordingly, he had only until **July 21, 2016**, either to again toll the limitations period or to file his federal application.

Petitioner had no other applications for post-conviction or other collateral review pending before the state courts at any time on or before July 21, 2016.  Therefore, he clearly is not entitled to further statutory tolling.[29]

The Court next considers equitable tolling.  The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling.  Holland v. Florida,

---

[27] Trice v. Cain, No. 16-KH-142, p. 3 (La. App. 5th Cir. Apr. 8, 2016); State Rec., Vol. 6 of 6.
[28] Because the thirtieth day fell on a Sunday, petitioner had until Monday, May 9, 2016, to seek further review. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.
[29] Although petitioner subsequently filed another state post-conviction application in 2017, state court filings *after* expiration of the federal limitations period are of no consequence for tolling purposes.  Simply put:  once the federal limitations period has expired, "[t]here [i]s nothing to toll."  Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted). A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002). In the instant case, petitioner has brought forth no evidence whatsoever demonstrating that he is entitled to such tolling, and this Court knows of no reason that would support equitable tolling of the statute of limitations.

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by asserting a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup[ v. Delo, 513 U.S. 298 (1995) and House[ v. Bell, 547 U.S. 518 (2006)], or, as in this case, expiration of the statute of limitations." Perkins, 569 U.S. at 386. Because petitioner contends that he is actually innocent in the instant case, the Court will consider that contention as an invocation of the Perkins rule.

In assessing a claim of actual innocence, a federal habeas court normally first examines the evidence presented at trial and on which the petitioner's conviction was based. See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F.

8

App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014).

Here, petitioner was convicted of aggravated rape. In pertinent part, Louisiana law at the time of the offense provided: "Aggravated rape is a rape committed … where the anal … sexual intercourse is deemed to be without lawful consent of the victim because it is committed … [w]hen the victim is under the age of thirteen years." La. Rev. Stat. Ann. § 14:42(A)(4).[30] On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the evidence of that crime in this case as follows:

> This case involves allegations that defendant committed aggravated rape upon M.H.[FN 3] by anal copulation between October 20, 2007, and July 3, 2009. At the time of the incidents, M.H., who was around eight years old, lived with his mother, Ms. H., his siblings, and his mother's boyfriend, Chris Taylor, at the home of defendant's mother, Ms. Evatte Trice.
>
>> [FN 3] In accordance with LSA-R.S. 46:1844(W)(3), the victim, who is a minor, and his family will be referred to by their initials to protect the victim's identity.
>
> On July 8, 2009, M.H. went to one of his regular counseling sessions with Nishia Talwar, who was treating him for behavioral and emotional disorders, and disclosed to her that defendant had molested him. M.H. advised Ms. Talwar that he did not share this information with his mother because he was concerned over being "fussed at." Ms. Talwar reported this information to the appropriate authorities, and on the following day, Deputy Stan Kerr of the Jefferson Parish Sheriff's Office was dispatched in response to a call about an aggravated rape.
> After arriving at the victim's residence on Jordan Drive, Deputy Kerr met with Ms. H. and Darrick Lang, a child protection investigator with the Department of Social Services. During his investigation on the scene, Deputy Kerr learned that the sexual abuse consisted of five incidents of anal penetration which occurred at two different locations, that the alleged perpetrator was defendant, that the victim was M.H., and that the last alleged rape occurred between July 2 and July 3. Once Deputy Kerr gathered this information, he notified and turned the matter over to the detective bureau. In addition, Mr. Lang conducted interviews with M.H., Ms. H., and the other children in the house, and concluded that there was "enough substantial evidence to state that it is a valid case." Based on Mr. Lang's report, M.H. was removed from the family's home.
> M.H. was subsequently brought to Children's Hospital for a physical examination. Dr. Adrienne Atzemis performed the exam, and at trial, she testified

---

[30] The statute has since been amended to change the name of this offense to "first degree rape."

that the results of the exam were "normal" for a person of M.H.'s age.  However, she also testified that most children who have been sexually abused have a normal exam, meaning that there is no tear, redness, bruise, or other visible indications.

Thereafter, on July 15, 2009, M.H. was brought to the Children's Advocacy Center for a forensic interview.  During his interview with Staci Lanza, M.H. recounted specific incidents where defendant would pull down his pants and "put his penis in [M.H.'s] butt."  Based on these disclosures by the victim, defendant was arrested.

Subsequently, in January of 2011, M.H., his mother, and defendant's mother, Ms. Trice, went to the law office of Kenneth Beck, defendant's former attorney.  At that visit, M.H. was quiet and did not say anything.  However, his mother executed an affidavit at that time stating that she did not believe that her son was raped.  A few months later, the three returned to Mr. Beck's office, at which time M.H. told the attorney that he had lied about being touched by defendant because defendant had punished him.

On April 12, 2011, Detective Cynthia Durham, the officer assigned to handle the investigation, met with M.H. and his mother, after learning that M.H. had met with defendant's attorney in reference to the allegations.  Detective Durham took a recorded statement during which M.H. said that Evatte Trice "had wanted him to lie and state that he was tired of getting whippings from [defendant], so that is why he made up the allegations of being sexually assaulted."  During the interview with Detective Durham, M.H. told her that the truth was he had been anally penetrated by defendant.

M.H.'s mother, Ms. H., did not believe M.H.'s allegations and was uncooperative throughout the proceedings.  At some point, she left the state with M.H., and in January of 2014, she was arrested in Lafayette pursuant to a material witness warrant and was incarcerated until trial in this matter.  At trial, Ms. H. admitted that she was close to defendant and that she had been smiling and laughing with him as they waited for the jury that morning.  She further stated that defendant had watched her children numerous times, and she thought that defendant and M.H. got along fine.  During trial, she informed the jury that she did not believe that her son was raped or touched at all.

At trial, fourteen-year-old M.H. testified regarding defendant's sexual abuse of him.  He recounted that defendant "put his penis in my butt."  According to M.H., this abuse started when he was eight years old, and it happened approximately five times, either at Evatte Trice's house or "Uncle Kenny's house." M.H. testified about one specific incident that occurred during the school year at Ms. Trice's house while he was getting ready for school.  Defendant called M.H. into the bedroom and told him to lie down on the bed.  M.H. laid on his stomach on the bed while defendant stood behind him.  Defendant removed M.H.'s pants and "put his penis in [M.H.'s] butt."  M.H. testified that his "butt felt wet" after defendant had finished, and that defendant wiped M.H. with a towel and told him not to tell anyone.

M.H. described another incident that occurred at Ms. Trice's house when M.H. went into the kitchen to get water.  According to M.H., defendant walked in, "stuck his middle finger" at him, and put him on the floor on his stomach.

10

> Defendant then "put his penis in [M.H.'s] butt." Once again, M.H. described that his "butt was wet," and that defendant wiped it with a towel. During his testimony, M.H. told of another incident that occurred at "Uncle Kenny's house" during the summer. M.H. was at the home with "B.J." and "Junior" watching a movie. While M.H. and B.J. went into Junior's room to get another movie, defendant walked in and told B.J. to get out. After B.J. left, defendant told M.H. to lie down. M.H. laid on the floor, and defendant "put his penis in [M.H.'s] butt." Defendant told M.H. not to tell anyone what had happened.
>    At trial, defendant testified in his own behalf. Defendant stated that he never owned a gun.[FN 4] In addition, he never threatened M.H., touched M.H. inappropriately, or anally raped M.H.
>
>> [FN 4] At one point, M.H. apparently told Seth Shute, an attorney with the Jefferson Parish District Attorney's Office, that defendant had threatened to hurt M.H.'s mother with a gun and that the fear of his mother getting hurt resulted in a delay of the disclosure of the rapes. However, at trial, M.H. testified that defendant did not threaten to hurt his mother with a gun.[31]

A federal habeas court next examines the petitioner's new evidence of his purported actual innocence. In this case, that evidence consists of an affidavit from M.H.'s grandmother concerning a conversation she allegedly had with M.H. two and one-half months after petitioner's conviction. In that affidavit, she stated:

> I ask my grandson to explain to me what happened. I ask him if Ozaki stuck his penis in his mouth or ass and he told me no, I would never let that happen. I ask [M.H.], my grandson why he testified that Ozaki had intercourse with him, he didn't know what that was. I ask him if we could get another court date set up if he would tell the truth and he said, no. He would not attend. … I was very close to my grandson and all my grand children. I listen to their problems, had [M.H.] been raped by Ozaki, he would have told me. [M.H.] at trial said Ozaki raped him 7 times, not so, I would have known the first time.[32]

However, in explaining what must be shown for a petitioner to succeed on an "actual innocence" claim, the United States Fifth Circuit Court of Appeals has held:

> This exception's demanding standard requires evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error. The standard is seldom met.
>    An actual-innocence claim is only established when it is shown that, in the light of newly-discovered evidence, it is more likely than not that no reasonable

---

[31] State v. Trice, 167 So. 3d 89, 90-92 (La. App. 5th Cir. 2014); State Rec., Vol. 5 of 6.
[32] State Rec., Vol. 6 of 6, affidavit dated October 4, 2017.

11

> juror would have found petitioner guilty beyond a reasonable doubt. Therefore, a credible claim must be supported by new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Actual innocence is then demonstrated only when the court scrutinizes the likely impact on reasonable jurors of the overall, newly supplemented record to conclude that, in the light of all evidence – both the evidence presented at trial and that newly discovered – no juror, acting reasonably, would have voted to find petitioner guilty beyond a reasonable doubt.

Floyd v. Vannoy, 894 F.3d 143, 154-55 (5th Cir. 2018) (citations, quotation marks, and brackets omitted), cert. denied, 139 S. Ct. 573 (2018).

In the instant case, the grandmother's affidavit falls far short of that standard. It is nothing more than a secondhand victim recantation. However, it was established at trial that M.H. *previously* recanted his allegations when *other* adults in his life pressured him to do so – a recantation he quickly retracted when questioned by authorities. This is simply more of the same, and there is no reason to believe that it would have carried any greater weight with the jurors than before or produced a different outcome at trial.

It must further be noted that M.H. expressly told his grandmother that he would refuse to formally recant his allegations in court. Therefore, the only possible value of this new "evidence" would be to impeach M.H.'s testimony. However, impeachment evidence generally is not considered to be colorable evidence of "actual innocence." See, e.g., Munchinski v. Wilson, 694 F.3d 308, 338 (3d Cir. 2012) ("[M]ere impeachment evidence is generally not sufficient to satisfy the [actual innocence] standard."); Recasner v. Tanner, Civ. Action No. 17-2220, 2017 WL 9565823, at *4 (E.D. La. July 25, 2017) ("While an inconsistent statement might be of some value at trial for impeachment purposes, it is not in and of itself evidence of actual innocence."), adopted, 2018 WL 3036329 (E.D. La. June 19, 2018), appeal dismissed, No. 18-30809, 2018 WL 6921116 (5th Cir. Oct. 25, 2018); Crayton v. Cain, Civ. Action No. 02-2162, 2013 WL 5305673, at *5 (E.D.

La. Sept. 19, 2013) ("Although the defense might have been able to cast some doubt based on the seemingly inconsistent statements, a petitioner does not make a colorable 'actual innocence' claim simply by showing that, in light of his new evidence, his guilt is questionable or that reasonable doubt is conceivable." (quotation marks omitted)); Jahagirdar v. United States, 653 F. Supp. 2d 125, 130 (D. Mass. 2009) ("While the grand jury testimony might have been used as a prior inconsistent statement to impeach Hogaboom, it is not evidence of Jahagirdar's actual innocence."); Brian R. Means, Federal Habeas Manual § 9A:146 (2020) ("Latter-day impeachment and hearsay evidence will seldom make a showing that no reasonable juror would have believed a witness' account."); cf. Schlup v. Delo, 513 U.S. 289, 329 (1995) ("The meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty.").

For these reasons, the Court finds that petitioner has failed to present a colorable claim of actual innocence and that Perkins does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that he is eligible for equitable tolling or that he is actually innocent, his federal application for habeas corpus relief had to be filed no later than **July 21, 2016**, in order to be timely under Subsection A. His application was not filed until on or about **May 29, 2019**, and, therefore, it was untimely under that subsection.

**<u>Subsection D</u>**

Out of an abundance of caution, the Court also notes that petitioner's federal application would be untimely even if it is considered under Subsection D. As previously noted, Subsection D can be invoked to delay the commencement of the statute of limitations until "the date on which

the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).

The factual predicate at issue here is, once again, H.M.'s purported recantation to his grandmother. However, according to petitioner, he first learned of that recantation in **July of 2017**.[33] Even if the Court assumes that petitioner could not have learned of the recantation any earlier, the statute of limitations would have commenced under Subsection D no later than **July of 2017**,[34] and then expired one year later in **July of 2018**.

Further, that deadline was *not* extended by statutory tolling. As previously noted, statutory tolling is triggered only by "a *properly filed* application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2) (emphasis added). Although petitioner filed a state post-conviction application within one year of July of 2017, the Louisiana Supreme Court ruled that the application was *untimely under state law*. That is fatal. The United States Supreme Court has expressly held that time limits are conditions of filing and, therefore, an untimely state application cannot be deemed "properly filed" for the purposes of § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005). "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Id. at 414 (quotation marks and brackets omitted).

Further, although the statute of limitations is also subject to equitable tolling, this Court has already explained herein that "a petitioner is entitled to equitable tolling only if he shows both

---

[33] Rec. Doc. 3-2, pp. 2 and 7.
[34] It is a petitioner's discovery of the factual predicate (not his collection of supporting evidence) that triggers Subsection D. See, e.g., Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998) ("Flanagan is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim. … Section 2244(d)(1)(D) does not convey a statutory right to an extended delay … while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim."). Therefore, it was the receipt of the grandmother's original letter revealing the recantation to petitioner in July of 2017 – not his later receipt of her affidavit in October of 2017 – which would matter for purposes of Subsection D. However, in any event, that distinction is immaterial here, because petitioner's application would still be untimely even if receipt of the affidavit was the triggering event.

14

that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and *prevented* timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (emphasis added; internal quotation marks omitted).

Here, petitioner's belated discovery of the recantation does not warrant equitable tolling because it in no way prevented him from timely seeking federal relief under Subsection D. Although he was, of course, required to exhaust his state court remedies with respect to any claims founded on his "new evidence," see 28 U.S.C. § 2254(b)(1), he nevertheless still could have filed for federal relief within one year of his discovery of the recantation simply "by filing a 'protective' petition in federal court and asking the federal court to stay and obey the federal habeas proceedings until state remedies are exhausted." Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005). He did *not* avail himself of that option, and the United States Fifth Circuit Court of Appeals has stated that where a petitioner "could have elected to file a protective federal petition and request a stay, we hold that he was not *prevented* from asserting his rights, and that *equitable tolling does not apply*." Madden v. Thaler, 521 F. App'x 316, 323 (5th Cir. 2013) (emphasis added).

Because neither statutory nor equitable tolling would aid him, and because, as already explained, he has not made a colorable showing of actual innocence, petitioner's federal application would have been due no later than **July of 2018** *even if* he qualified for a delayed commencement of the federal statute of limitations under 28 U.S.C. § 2244(b)(1)(D). Because his application was not filed until on or about **May 29, 2019**, it would also be untimely under that subsection.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Ozaki Trice be **DISMISSED WITH PREJUDICE** as untimely.

15

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[35]

New Orleans, Louisiana, this ___7th___ day of August, 2020.

*Janis Van Meerveld*
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.